OPINION OF THE COURT
David Stadtmauer, J.
The defendant moves for an order directing plaintiff to allow discovery and inspection of a 23-page memorandum used to refresh the recollection of a witness prior to deposition before trial. The refreshment of recollection occurred 10 or more years after the events in question and 9 years after the *1092 memorandum was written. For the reasons discussed herein, that motion is granted.
The facts are as follows: in 1969, plaintiff sued for goods sold and delivered to defendant in the period from 1965 through 1968. Defendant denied the allegations and counterclaimed for breach of warranty, misrepresentation and fraud. In preparation for this litigation, a series of questions was presented to plaintiff. In response, Herbert Hoover, then an executive employee of Carpenter, forwarded the afore-mentioned 23-page memordandum to the Lyon Furniture Mercantile Agency, a collection agent for Carpenter. In 1970, Hoover left his employment with plaintiff for another position.
Eight years later, in 1978, plaintiff indicated that Hoover’s testimony was needed for trial but that Hoover would not come to New York to testify. An order of this court was subsequently obtained, directing deposition of the witness in London, England, where he was residing. During the course of the lengthy deposition (in May, 1978), Hoover admitted that in February, 1978, three months prior to the deposition and in preparation for trial, he used his 1969 memorandum to refresh his recollection. Defense counsel demanded inspection of this document. Plaintiff refused on the ground that the writing was intended as a confidential communication to plaintiff’s counsel and was therefore protected by the attorney-client privilege. This motion followed.
If the document were not cloaked with the attorney-client privilege at the time it was written in 1969, then it obviously should not be protected from inspection by opposing counsel at this time.
On the other hand, if plaintiff could establish the existence of the privilege in this case, then this court must determine whether the privilege was waived when Hoover used the memorandum in February, 1978 to refresh recollection. This is a most difficult question as it seemingly places the essential attorney-client privilege in direct conflict with the just as essential right of cross-examination. While this court is reluctant to establish a scale of importance for such rights and privileges, we cannot be unmindful of the modern trend toward greater disclosure as well as to basic considerations of fair play. (See Fisch, NY Evidence [2d ed], § 531.)
At the outset, it must be noted that there is ample justification for according privileged status to communications between attorney and client. However, our courts have upon *1093 occasion shown a willingness to recognize that the privilege may sometimes lead to unjust results and that social policies calling for disclosure may prevail over those upon which the privilege is founded. (See Mutual Life Ins. Co. v Tailored Woman, 194 Misc 192, mod on other grounds 275 App Div 759; Myer v Myer, 189 Misc 406, affd 272 App Div 814; Shafer v Utica Mut. Ins. Co., 248 App Div 279.)
As a general rule, any writing that is used to refresh recollection for testimony may be inspected by opposing counsel and used to test the credibility of the witness. This is based on the theory that once the witness’ recollection has been refreshed, he testifies thereafter as a result of such refreshed recollection. This right of inspection has been held to apply to writings consulted by a witness while on the stand at trial (People v Gezzo, 307 NY 385) as well as to those writings consulted before trial. (Doxtator v Swarthout, 38 AD2d 782; Alfredsen v Loomis, 148 NYS2d 468.) As the court stated in Alfredsen, at page 470: "The time when the memorandum * * * was referred to by the witness, whether at the trial or examination or prior thereto, would seem unimportant * * * The important fact is that it was used by him to refresh his recollection and that it accomplished that purpose.” Certainly the risk to an adversary is precisely the same whether the witness refreshes his recollection by consulting a writing before trial, as in the instant case, or by consulting it while on the witness stand during trial.
In none of the afore-mentioned cases, Gezzo, Doxtator or Alfredsen, did the court allude to any possible qualification or limitation on the right of an adversary to inspect any writing used to refresh recollection. We also note the strength of the dictum in Tibbetts v Sternberg (66 Barb 201, 203) that the right of a party to protection against the introduction against him of false, forged, or manufactured evidence, which he is not permitted to inspect, must not be invaded a hair’s breadth. "It is too valuable to be trifled with, or to permit the court to enter into any calculation as to how far it may be encroached upon without injury to the party.”
The contrary view appears in two cases, both decided in the Second Department, Falk v Kalt (44 Misc 2d 172) and Matter of Van Gorder (10 Misc 2d 648). However, both cases are readily distinguishable from the facts of the instant case and neither decision appears to have served as the basis for any subsequent court decisions. It is also noted that Falk relies *1094 exclusively on the earlier Matter of Van Gorder decision and that Matter of Van Gorder does not cite any on point cases in support of its position.
Lastly, this court takes note of the following special circumstances of the instant case:
(1) With respect to the privileged status of Hoover’s communication, plaintiff’s current counsel did not submit affidavits from the Lyon Furniture Merchantile Agency and plaintiffs original counsel in 1969, both of whom had personal knowledge of the facts. In this regard, the affidavit of plaintiffs present counsel has no probative value, and the affidavit of Myron H. Reinhart, Carpenter’s technical director, does not establish whether Lyon maintained the confidentiality of the memorandum or indeed whether Lyon was a necessary intermediary.
(2) There was a considerable length of time (10 years or more) separating the events in question from the refreshment of recollection, thereby increasing the likelihood that Hoover had in fact relied on the 1969 memorandum for his May, 1978 testimony.
(3) Hoover’s resignation from Carpenter in 1970, and his refusal to come to New York to testify. Certainly, the deposition of the witness in London in lieu of his testimony at trial deprives the trier of fact of valuable demeanor evidence and necessarily affects the scope of cross-examination.
(4) The basis of the allegations of fraud in defendant’s counterclaim are, to a significant degree, the actions of the witness Hoover himself.
Weighing all the circumstances, and with a view to avoiding unjust results, this court directs plaintiff to allow counsel for defendant to inspect Hoover’s 1969 memorandum.